Strafford, April 1, 1941. } No. 3234.

UNITED STATES FIDELITY & GUARANTY CO.

*v.*

ABRAHAM M. SNIERSON & a.

364

*Hughes & Burns (Mr. Walter A. Calderwood, Jr.* orally), for the plaintiff.

*Cooper, Hall & Grimes (Mr. Grimes* orally), for Snierson.

*Errol S. Hall* (by brief and orally), for Bickford.

PAGE, J. The plaintiff, beginning in April 1934, issued to Snierson annual policies covering liability for bodily injuries arising from the operation of his truck for commercial uses in connection with his business as a junk dealer. The policy in question was effective for one year from April 23, 1938. On April 7, 1939, the defendant Bickford was injured while working for Snierson temporarily. The truck which figured in the accident was being operated by Snierson. The plaintiff seeks to have a determination of the question of its duty to defend the suit brought as a consequence by Bickford against Snierson.

When the plaintiff issued its first policy to Snierson in 1934, Snierson employed nobody. Subsequent policies were all issued automatically with a clause excluding from coverage all employees of Snierson, and the policy in question was so written. Snierson never had an employee until 1936. During that year he employed a man, now and then, for a day or two. In the summer of 1937, he employed one man as occasion required, but not steadily, four or five days a week, over a period of about six months. The same was true in the

summer of 1938. Snierson never notified the plaintiff that the situation as to employment had changed, and the plaintiff had no notice of the fact until after Bickford's injury.

The policy in question had a "supplementary application" attached, stating that the number of employees engaged in Snierson's business "at any time during the year" was not more than "none," and that he carried no workmen's compensation or employer's liability insurance. While Snierson did not sign this application, it was a part of the contract, and he is in no position to claim that injuries to employees are covered. *Gagne* v. *Company*, 78 N. H. 439. The contract in terms excludes coverage for bodily injury to any employee of Snierson while engaged in the business of the insured, other than domestic employment. It is clear that Snierson, as a reasonable man, could not suppose that he had bought the greater coverage. *Langelier* v. *Company, post,* ——. But for the exclusion, the premium paid would have been somewhat higher than that charged.

The defendants' position, adopted by the master, is that the "New Hampshire Statutory Motor Vehicle Endorsement," attached to the policy, alters the interpretation. This endorsement declares that the policy is a "motor vehicle liability policy" as defined in Chapter 161, Laws of 1937, "and all policy provisions required by said Chapter are expressly incorporated in this policy by reference," with the further provision that the policy "is to be interpreted with reference to said Chapter." The form of the policy and endorsement were approved by the Insurance Commissioner. Under Chapter 54, Laws of 1927, with a similar policy and a similar endorsement, the coverage was held not to extend to employees as a class when that class was excluded by the policy. "The insurer receiving the approval was entitled to take it at its face value." *Shelby &c. Company* v. *Lynch*, 89 N. H. 510, 513. The exclusion was effective, even though the endorsement adopted the provisions of an act defining a wider coverage, since the authority given to the Insurance Commissioner to approve policy forms included approval of "the limits of liability." *Raymond* v. *Company*, 86 N. H. 93; *Continental &c. Company* v. *Buxton*, 88 N. H. 447.

The defendants contend that the act of 1937, under which the present case arises, is to be interpreted differently from that of 1927, which it repealed. They point to the facts that the *Buxton* case was decided on March 2, 1937, and that Chapter 161, Laws of 1937, was enacted on July 14, 1937. The opportunity plainly existed to change the statute so that there should be no room for the judicial inter-

pretation theretofore adopted. But if the intent to do so was not expressed or clearly inferable, the former interpretation has been acquiesced in.

Section 6, Chapter 54, Laws of 1927, is the one whose interpretation resulted in the cases already cited. The directly applicable provision is repeated verbatim in Section 16, Chapter 161, Laws of 1937, except that the former phrase "motor vehicles and/or trailers" now appears as "motor vehicles and trailers or semi-trailers." The re-enactment of the former provision, with the sole elision of an awkward expression and the bringing of another form of vehicle into coverage, has no slightest bearing on the Insurance Commissioner's power to approve a policy excluding from coverage a special class of persons injured (*Buxton* case, at page 449). On the contrary, the giving of the power to the commissioner in exactly the same words indicates an intent to give him such power as he had theretofore been held to have. *Dubuc* v. *Industries, ante* 173.

Nor is any intent to change observable from the repetition in Section 16, of the act of 1937, of the precise words of Section 6 of the act of 1927 that "No motor vehicle liability policy, as defined in section 1, shall be issued or delivered in the state" without such approval as the Insurance Commissioner is empowered to give. There have been verbal changes in the definition of "motor vehicle liability policy" in the present act, but nothing in any wise material for the purposes of this case. The two acts are alike, as far as definition is concerned, in excepting from the application of the normal policy only employees who are actually responsible for the operation of the car when injured.

The defendants nevertheless assert that an entirely new provision of the act of 1937 (Section 19) furnishes clear proof of legislative intent to change the rule declared under the act of 1927. This section reads thus: "No motor vehicle liability policy other than that defined in section 1 shall be issued or delivered in this state by any authorized insurance company, except that such . . . company may issue and deliver what is known as a Standard Automobile Liability Policy by having attached thereto an indorsement meeting the requirements of this act, such indorsement to be in such form as the insurance commissioner shall prescribe and to be known as the New Hampshire Statutory Motor Vehicle Liability Policy Indorsement. The insurance commissioner shall approve only such policy, indorsements and binders as shall meet the requirements of this act." That means a policy (as defined in both the acts of 1927 and 1937), whose

limits of liability and premium rate have the approval of the commissioner.

This section recognizes the practice of using standard policies and endorsements which had grown up under the act of 1927 (see the *Shelby* case). The standard policy and endorsement authorized were used in the present case. They were approved as required by law. The approval of the limits of liability was not forbidden in terms or by implication. On the contrary, it was permitted by Section 16. The approved policy therefore met the requirements of the act, which empowers the commissioner to approve limits of liability and premium rates.

If the legislature had intended anything other than the judicial interpretation of the act of 1927, words were available to express the intention. We think that they could not have intended that an approved contract of limited coverage for a lower rate should be metamorphosed into a contract for a wider coverage for which the insured never paid, and which he never asked the insurer to write. Conforming to the act, the contract imposes liability only in accordance with its terms. *Raymond* v. *Company*, 86 N. H. 93, 101.

The ruling excepted to was erroneous, and the contrary ruling should have been made.

It is unnecessary to consider the question whether the policy covered the use of Snierson's truck at the time of the accident. The use was not for transportation or immediately for loading, but as a power apparatus to remove the motor from an old automobile.

*Judgment for the plaintiff.*

All concurred.